## ROSEVILLE UNION BANK
### v.
## FRANK P. GILBERT AND JOHN A. GORDON.

*Negotiable Instruments—Action on Note—Extension—Payment—Surety Released.*

In an action on a promissory note brought by a bank against the maker and surety, it is *held:* That the evidence sustains the plea of the surety, alleging an extension of the note by the cashier of the plaintiff without his consent; that the erasure of an indorsement and the failure of the plaintiff to produce its books on notice, required more satisfactory explanation than was given; that a payment of interest to its cashier, although in board, was, under the evidence, a payment to the plaintiff; and that the instructions, although not strictly accurate, could not have misled the jury.

[Opinion filed May 27, 1887.]

APPEAL from the Circuit Court of Warren County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. JAMES W. DAVIDSON and WILLIAM C. NORCROSS, for appellant.

To constitute a valid contract for an extension of time of payment on a promissory note so as to discharge a surety, three things at least are essential: *First,* there must be a valid contract entered into between the payee of the note and the principal maker to extend time; *Second,* the time of extension must be fixed and certain; and *Third,* there must be a new and valid consideration paid by the principal maker and accepted by the payee, and all of this must be without the consent of the surety. Jennings v. Fielder, 8 Ill. App. 252; Waters v. Simpson, 2 Gilm. 370; Grabfelder v. Welles, 10 Ill. App. 330; Galbraith v. Fullerton, 53 Ill. 126; Dodson v. Henderson, 113 Ill. 360; Booth v. Wiley, 102 Ill. 84; Gardner v. Watson, 14 Ill. 347; Woolford v. Dow, 34 Ill. 424.

The contract to extend must be so certain and binding be-

tween the payee and principal maker as to postpone and hinder the remedies of the surety as well as the rights of payee. Galbraith v. Fullerton, 53 Ill. 126; Taylor v. Beck, 13 Ill. 376; Flynn v. Mudd, 27 Ill. 323; Moore v. Topliff, 107 Ill. 241; Waters v. Simpson, 2 Gilm. 370.

When an error of law has been committed it is the duty of the Appellate Court to reverse the case and remand it for trial, unless it clearly appears that such error could not have in any way injured appellant's rights on the former trial. I. C. R. R. v. Maffett, 67 Ill. 431; Volk v. Roche, 70 Ill. 297.

Messrs. KIRKPATRICK & ALEXANDER, for appellee.

WELCH, J. This was a suit brought by the Roseville Union Bank against Frank P. Gilbert and John A. Gordon on a promissory note, in which it was admitted on the trial that Gilbert was the principal maker of the note and Gordon was surety.

Gilbert made no defense but suffered a default. Gordon interposed a special plea alleging an extension of time of payment, in which it is alleged: "And that when the said note became due, to wit, on the 15th day of May, A. D. 1876, the plaintiff, at the request of the said Frank P. Gilbert and in consideration of the sum of $2.08⅓, being the interest in advance for thirty days, then and there agreed with the said Frank P. Gilbert to give, and did then and there give to him, further day of payment of the amount of said note, to wit, the 14th day of June, 1876, then next ensuing, without the knowledge or consent of him, the said John A. Gordon, by reason whereof the said John A. Gordon became discharged from all liability upon said note." Replication, trial, and verdict for Gordon on the plea. Judgment overruling motion for a new trial and judgment on verdict against Gilbert for $450. This appeal is taken from the judgment overruling motion for a new trial. We are of the opinion the evidence sustains the plea. Gilbert states: "When the note was due I went to Pratt, who was cashier of plaintiff's bank, and asked him for an extension of thirty days on

the note, paying interest on same. Told him I did not care to bother Gordon. My best recollection is that I paid the interest for an extension. At one time there was a board bill applied on the note; can't say certainly when, but one of the payments on the note was a board bill; other payments were indorsed in money." On cross-examination he says: " Have no recollection of making the payment on the note; can't bring any certain dates of payment." Gordon states that " he never consented to an extension of time on the note; some two or three months after the note fell due, and about the time Gilbert made an assignment, Seth F. Pratt called on me at my office and told me that he had agreed with Gilbert to extend the time of the note, and asked me if I considered myself bound for the note; I told him no; that he ought to have collected it long ago, and not let it lie so long. Pratt said: ' Well, I suppose I have given time on it, and that will release you.' I got a copy of the note from Pratt; indorsements on back, same then as now; the writing on copy and indorsements are all Seth Pratt's."

Copy of note and indorsements:

" $250.                    ROSEVILLE, Ill., Feb'y 12, 1876.

" Ninety days after date, we, or either of us, promise to pay to the order of the cashier of the Roseville Union Bank two hundred and fifty dollars, value received, payable at their banking office, with interest at ten per cent. per annum after maturity. Indorsements: ' Interest paid on the within for thirty days from May 15, 1876.' ' Received interest to July 15, 1876.' ' 8-14. Received on the within ($10) ten dollars.' "

It further appears that notice in writing had been given plaintiff's bank to produce the books of the bank showing items of income of the bank for the months of May, June, July and August, 1876. Seth F. Pratt, the cashier, admitted in the presence and hearing of the jury, that he had received such notice; that he was unable to comply with the notice; that there was no book in the bank now that would show the items received during those months; that such a book had been kept, but could not be found; that it was lost or destroyed and

that he could not produce it. Seth F. Pratt denies that he ever agreed to extend the time of the payment of the note or that he ever received interest in advance on the note; denies that he ever told Gordon that he had given time on the note, and that " that will release you; " he admits that he placed on the note the indorsement, "Interest paid on within for thirty days from May 15, 1876," and that it was erased by him. He says it was erased and included in one of the other indorsements. " I think the way it was, the first indorsement was in settlement for board and the last indorsement included both, as I was taking meals with Gilbert."

On re-cross examination he says that " the last indorsement does not include the first. It was the second one received interest to July 15th, $4.40." If this statement is true, then the erasure of the first indorsement would have been made at the time of the entry of the second indorsement. The copy of the indorsements on the copy of the note furnished Gordon contains all the indorsements except the last, with no erasure of the first one. We hold that the evidence of Gilbert, Gordon and the indorsement, as originally made upon the note by the cashier, fully sustains the plea, and that the jury were fully justified in disregarding the evidence for the plaintiff. The erasure of the indorsement and the non-production of its books required a more satisfactory explanation than the record in this case discloses. The instructions for appellee, although not strictly accurate in stating the law, could not have misled the jury. In the view we take of the case it was the only verdict the jury could have rendered, to have given substantial justice between the parties. In such case, as held in Creote v. Willey, 83, Ill. 444, the verdict will not be set aside.

Substantial justice has been done. The judgment is affirmed.                                    *Judgment affirmed.*

*On petition for a rehearing.*

[Opinion filed December 16, 1887.]

*Per Curiam.* Two questions were presented to the jury

under the plea. 1st. Was there an agreement between the principal in the note and the cashier of the appellant to extend the time of payment of the note from the time it became due, May 15, 1876, to June 15, 1876, without the consent of the security, the appellee? 2d. Was the interest paid by the principal in advance as a consideration for so doing?

It is not claimed that there is any instruction given by the court for the appellee injurious to appellant on the first pro-position, and the jury having found from the evidence that there was such an agreement, we must regard it as rightfully sustained by the evidence.

As to the second question presented to the jury the appellant claims that there was no payment to it in a legal point of view; that the cashier received of the principal in the note the amount of the advanced interest in a board bill due from such cashier on his own account to the principal in the note, and that it did not receive the money. Instruction Nos. 3 and 4, given by the court at the request of appellee, are complained of as misleading to the jury on this issue. The third instruction told the jury in substance, if the cashier owed the principal in the note for board due or to become due, and by agreement between them the cashier undertook to pay the bank the interest agreed on in consideration of so much board and at or about the same time charged the principal with the amount of interest against so much board and entered the payment on the back of the note for the amount of the interest agreed, then this in law was a good payment of the interest. The fourth was about the same in substance.

Upon the question whether the cash was paid by the principal maker of the note on the particular interest for extension the evidence is somewhat conflicting, and if this were the turning point in the case the error in the instructions might be sufficient to cause reversal.

The main point upon which the case hinges is, did the cashier pay the appellant the money as he had agreed, or did he make the indorsement on the note of the interest received without accounting to the bank for it?

If the cashier actually paid such interest into the treasury

Roseville Union Bank v. Gilbert.

of the bank, then the bank would be bound by the contract of extension the same as though the principal on the note had paid it in cash over the counter. Can there be any doubt that such was the case?

The first indorsement made on the note was as follows: " Interest paid on the within for thirty days from May 15, 1876." This was the indorsement upon which the extension was based, and if made before the 15th of June it showed for itself that there was interest paid in advance for the extension. The second indorsement is as follows: " 7–15. Received Int. to July 15. $4.40." The date of this by the figure would indicate 7th month, 15th day, or July 15th. The note had two other indorsements made in August, 1876, not necessary to refer to. Now the cashier, a witness for appellant, swears that the first indorsement was afterward erased and the amount of interest carried into the second indorsement, being $2.20. He also swears that the amount of the first payment " was in settlement for board." The amount of money put into the first indorsement is still on the note and offered in evidence by the appellant, which is evidence produced by the appellant itself that the money was duly received and properly credited and is not in any way questioned as a good payment. If it was a good payment when credited in the second credit, it must have been when credited in the first. Nothing has happened to change the matter.

The erasement of the first credit was a suspicious circumstance, from which the jury might rightfully infer that the appellant was trying to obliterate damaging evidence. The cashier nowhere swears that he did not pay the money, shown by the credit first made, into the bank. The appellant also withheld its bank books from going in evidence, which would have shown how the record stood. Then on the point that the appellant received the money for the first interest from the cashier being clearly shown, it would be wholly immaterial whether the cashier got the cash from the principal maker of the note, or got its worth in his own board, by which he was procured to pay the money to the bank. In this state of the evidence the instructions could make no difference.

*Petition for rehearing denied.*